UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KEVIN RICHARDS,<br><br>Defendant | Criminal No.      22cr10033<br><br>Violations:<br><br>Count One: Receipt of Unlawful Gratuity by a Public Official<br>(18 U.S.C. § 201(c)(1)(B))<br><br>Counts Two-Three: False Statements<br>(18 U.S.C. § 1001(a)(2))<br><br>Forfeiture Allegation:<br>(18 U.S.C. § 981(a)(1)(C) and<br>28 U.S.C. § 2461(c)) |

INFORMATION

At all times relevant to this Information:

General Allegations

1.      Defendant KEVIN RICHARDS was a resident of Hanover, Massachusetts.

2.      RICHARDS was the Director of Leasing for the New England region of the Public Buildings Service division ("PBS") of the U.S. General Services Administration ("GSA"), and as such was a "public official" within the meaning of 18 U.S.C. § 201(a), that is, he was an "officer or employee or person acting for or on behalf of the United States, or any department, agency or branch of Government thereof … in any official function, under or by authority of any such department, agency or branch of Government …."  RICHARDS had been employed by the GSA dating back to approximately 1992.

1

3.      RICHARDS also worked as a real estate agent for a real estate company in Duxbury, Massachusetts (the "Duxbury Real Estate Company") that listed and sold residential real estate in the South Shore area of Massachusetts.

4.      "Individual A" was the owner of the Duxbury Real Estate Company; was an associate of RICHARDS; and had hired RICHARDS as a real estate agent for the Duxbury Real Estate Company in approximately 2017. Individual A had paid RICHARDS real estate commissions totaling approximately $9,425 in 2017 and approximately $15,392 in 2018.

GSA's Hiring Process

5.      GSA is the procurement agency of the United States government. It obtains and provides goods and services – for example, office space, office supplies, and information technology – that are necessary for federal employees to do their jobs.

6.      One of GSA's business lines is PBS.  PBS builds, leases, and maintains federal properties, including, for example, office buildings and courthouses.

7.      GSA posts job openings called Direct Hire Announcements on www.usajobs.gov, a publicly accessible website.

8.      After a Direct Hire Announcement closes, a GSA human resources employee emails the hiring manager a list of the names of all applicants who meet the criteria identified in the posting. The hiring manager decides which applicants to interview and emails their names to the human resources employee, who ensures they meet the qualifications of the job description, which is more extensive than the website posting. The hiring manager interviews the qualified candidates and makes a selection.

9.      Many federal civilian employees are paid according to the General Schedule ("GS") pay scale. The GS pay schedule has 15 pay grades and 10 steps in each grade. For new hires who have never worked for the federal government or served in the military, step 1 is the starting salary, and step 10 the maximum salary, within a pay grade. In rare circumstances, a starting salary above step 1 will be authorized for a new hire with "superior qualifications."

10.      Newly hired federal civilian employees with no prior federal employment or military experience accrue annual leave at the following rate: 4 hours per pay period for employees with less than three years of service; 6 hours per pay period for employees with at least three but less than fifteen years of service; and 8 hours for employees with fifteen or more years of service.  Each pay period is two weeks and a calendar year includes 26 pay periods. Thus, an employee at an annual leave rate of 4 hours per pay period accrues 13 vacation days per year.

11.      A starting accrual rate higher than 4 hours per pay period may be authorized for a new hire whose skills and experience are essential to the new position, were acquired through work that directly relates to the position, and are necessary to achieve an important agency mission or performance goal.

<u>GSA Ethics Training and Requirements</u>

12.      Each GSA employee, including RICHARDS, was required to complete yearly ethics training.  The yearly ethics training included taking an online course and test that advised employees on ethics rules, which included advice on the misuse of position, conflicting financial interests, and the impartiality in the performance of official duties, among other things. RICHARDS regularly completed the training, including every year from 2015-2020.

3

13.     Applicable ethics rules prohibited GSA employees, including RICHARDS, from participating in matters in which a reasonable person would question the employee's impartiality because of the employee's financial relationship with another person, absent prior supervisor notification and permission.

14.     In addition, GSA ethics rules prohibited GSA employees, including RICHARDS, from using or disclosing non-public information to further the employee's own private interests or the interests of another person.

15.     Further, because of RICHARDS's official position within GSA, RICHARDS was required to complete a U.S. Office of Government Ethics ("OGE") Form 450, "Confidential Financial Disclosure Report," and submit it to GSA's Ethics Office on a yearly basis.  He was required to sign and date the form, certifying that his statements on the form were true, complete, and correct to the best of his knowledge.

16.     The OGE Form 450 required RICHARDS to report, among other things, every position outside the U.S. government that he had held at any time during the calendar year reporting period, whether or not he had been compensated.  RICHARDS completed and certified OGE Form 450s dating back to at least as early as 2014 and continuing through 2021.

The Unlawful Gratuities Scheme

17.     RICHARDS was the Director of Leasing for PBS Region 1, whose headquarters were in Boston, Massachusetts, and which included Maine, Vermont, New Hampshire, Massachusetts, Rhode Island, and Connecticut.  As the Director of Leasing, RICHARDS wielded official authority and influence in the hiring process for PBS and made official decisions and recommendations with regard to hiring.

4

18.     In or about November 2019, GSA posted a Direct Hire Announcement on www.usajobs.gov for a position in the Boston office of PBS called Realty Specialist (Lease Contracting Officer), position series/grade GS-1170, listing number 2012001-DHA (the "Realty Specialist" opening). The opening was in the Office of Leasing, which RICHARDS headed.

   A.   *RICHARDS Provides Material Assistance and Non-Public Information to Individual A During the Hiring Process*

19.     On or about April 4, 2020, RICHARDS emailed the www.usajobs.gov link for the Realty Specialist opening from his GSA email account to his personal email account. He then forwarded the email from his personal account to Individual A's email account.

20.     On or about April 5, 2020, Individual A emailed his/her resume to RICHARDS's personal account.

21.     On or about April 5 and 6, 2020, RICHARDS reformatted and substantively edited Individual A's resume.  RICHARDS used both his personal email account and another family member's email account to send the revisions to Individual A.

22.     On or about April 6, 2020, Individual A applied for the Realty Specialist position, submitting his/her resume as edited by RICHARDS.

23.     On or about April 9, 2020, the Human Resources Specialist for the Boston office of PBS ("HR Specialist") emailed RICHARDS a list of the names of approximately 58 people who had applied for the Realty Specialist opening.  Individual A was not on the list.

24.     On or about April 15, 2020, RICHARDS emailed the HR Specialist that Individual A was "a person that we are interested in" who had applied for the Realty Specialist position but whose name was not on the list that the HR Specialist had sent.

25.     On or about April 15, 2020, the HR Specialist replied, "I just went back in and looked and realized I selected criteria that was too restrictive. I am going to send you a new list. This list will have many of the same names, but also additional ones."

26.     On or about April 15, 2020, the HR Specialist emailed RICHARDS a revised list containing the names of approximately 66 applicants for the Realty Specialist position. This list included Individual A.

27.     On or about April 21, 2020, RICHARDS selected two applicants, Individual A and a person identified herein as "Candidate B," to receive an interview for the Realty Specialist Position.

28.     On or about April 22, 2020, RICHARDS sent two emails from his GSA email account to his personal email account. The emails contained non-public information that included (a) internal GSA employee communications regarding what attributes and qualities GSA hiring officials sought for the Realty Specialist position and their proposed questions for prospective candidates; and (b) written lists of questions that had been asked during previous GSA interviews of job applicants for the Realty Specialist position.  RICHARDS forwarded both emails from his personal email account to Individual A's email account.

        B.     *RICHARDS Takes and Causes Official Actions to Benefit Individual A*

29.     RICHARDS asked his Deputy Director of Leasing ("Deputy Director") to interview Individual A and Candidate B.

30.     The Deputy Director interviewed Individual A and Candidate B on or about April 27, 2020. That same day, RICHARDS selected Individual A for the Realty Specialist position.

6

31.     The Realty Specialist position fell in the GS-12 pay grade. Ordinarily, a new hire in this position without prior federal employment or U.S. military service would have been paid at the GS-12, Step 1 salary of $85,428, and would have started accruing annual leave at the rate of 4 hours per pay period.

32.     On or about May 12, 2020, RICHARDS drafted and sent a "Request for Superior Qualifications Rate of Pay" memo to the Director of the PBS Service Center in GSA's Office of Human Resources Management (the "HR Director"), which recommended and requested authorization to offer Individual A the GS-12, Step 7 salary, which was $102,517.

33.     RICHARDS's superior-qualifications request required approval from the HR Director and six other GSA officials, including the PBS Regional Commissioner. All of these officials approved RICHARDS's request and recommendation.

34.     On or about May 19, 2020, RICHARDS drafted and sent the HR Director a "Request for Credit for Non-Federal Service" recommending and seeking approval to place Individual A in the 6-hour per-pay-period annual leave category based on Individual A's ten years of what RICHARDS described as "directly related private sector work experience and expertise."

35.     RICHARDS's creditable-service request required approval from the HR Director and two other GSA officials, including the PBS Regional Commissioner. All of these officials approved RICHARDS's request and recommendation.

36.     As a result of official acts that were taken and caused to be taken by RICHARDS, GSA offered Individual A the Realty Specialist position at the GS-12, Step 7 salary of $102,517

and the 6-hour annual leave category.  Individual A accepted the offer and started his/her new job on or about July 19, 2020.

### C.   Concealment During the Hiring Process

37.     RICHARDS did not disclose to the HR Specialist or his Deputy Director that he had an existing financial relationship with Individual A. Nor did he disclose this fact to the HR Director or any of the other GSA officials who approved RICHARDS's request and recommendation to pay Individual A at a Step 7 salary instead of Step 1, and who approved RICHARDS's request and recommendation for Individual A to accrue annual leave at a rate of 6 hours per pay period instead of 4 hours.

38.     One of the questions on the application for the Realty Specialist position was "How did you FIRST find out about this vacancy?" Individual A wrote, "USAjobs website." Individual A did not disclose the fact that RICHARDS had notified him/her about the posting on the website.

39.     Individual A did not disclose to the HR Specialist or the Deputy Director that he/she had an existing financial relationship with RICHARDS.

### D.   Gratuity Payment to RICHARDS by Individual A

40.     When Individual A began working at GSA on or about July 19, 2020, RICHARDS had not received a real estate commission from the Duxbury Real Estate Company for almost two years.

41.     On or about August 13, 2020, less than a month after Individual A started working at GSA, Individual A chose RICHARDS to be a listing agent for a $1,100,000 residential property in Duxbury. RICHARDS did not receive a commission on this property.

8

42.     On or about October 16, 2020, Individual A chose RICHARDS to be a listing agent for a residential property in Marshfield (the "Marshfield Property").

43.     On or about October 20, 2020, RICHARDS showed the Marshfield Property to a prospective buyer as part of his work as a listing agent for the Duxbury Real Estate Company.

44.     On or about January 29, 2021, Individual A paid RICHARDS a commission of $10,250 for his work on the sale of the Marshfield Property.

<u>RICHARDS's False Statements and Continued Concealment<br>of his Financial Relationship with Individual A</u>

45.     On his OGE Form 450 for 2019, RICHARDS disclosed that he held a position outside the U.S. Government as a sales agent for the Duxbury Real Estate Company. RICHARDS certified that his statements on the OGE Form 450 for 2019 were true, complete, and correct, and signed the form on or about January 7, 2020, and submitted it to GSA's Ethics Office.

46.     On his OGE Form 450 for 2020, however, RICHARDS stated that he did not have any reportable outside positions despite the fact that RICHARDS had worked as a sales agent for the Duxbury Real Estate Company in 2020.  RICHARDS certified that his statements on the OGE Form 450 for 2020 were true, complete, and correct, and signed the form on or about January 4, 2021, and submitted it to GSA's Ethics Office.

47.     On or about February 22, 2021, a GSA Attorney-Advisor and Regional Ethics Counselor (the "GSA Attorney-Advisor") emailed RICHARDS, "In reviewing your [OGE Form] 450 [for 2020] I noted that last year you listed an outside position with [the Duxbury Real Estate Company]. Do you no longer have that position?" RICHARDS replied on the same date, "I did not work for them last year. I did not do any outside business last year."

9

48.     RICHARDS's statement on his OGE Form 450 that he had held no reportable outside position in 2020, and his February 22, 2021 email to the GSA Attorney-Advisor, were materially false.

49.     RICHARDS knew that his statements were false. Among other things, he had worked for the Duxbury Real Estate Company in 2020 as a listing agent for the Marshfield Property, for which he received a $10,250 commission check on or about January 29, 2021. In addition, on or about March 17, 2021, RICHARDS filed a personal federal income tax return, Form 1040, in which he reported incurring a net loss of $14,592 working for the Duxbury Real Estate Company in 2020.

<u>COUNT ONE</u>
Receipt of a Gratuity by a Public Official
(18 U.S.C. § 201(c)(1)(B))

The United States Attorney alleges:

50.     The United States Attorney re-alleges and incorporates by reference paragraphs 1-49 of this Information.

51.     From in or about April 2020 through in or about January 2021, in the District of Massachusetts, and elsewhere, the defendant,

KEVIN RICHARDS,

a public official and employee of the GSA, an agency of the United States, did, directly and indirectly, knowingly demand, seek, receive, accept, and agree to receive and accept something of value personally, that is, a $10,250 commission payment from Individual A, for and because of one or more official acts performed and caused to be performed by RICHARDS, that is, hiring Individual A, securing a Step 7 salary for Individual A, and securing Individual A's placement in the 6-hour annual leave category.

All in violation of Title 18, United States Code, Section 201(c)(1)(B).

COUNTS TWO-THREE
False Statements
(18 U.S.C. § 1001(a)(2))

The United States Attorney further alleges:

52.     The United States Attorney re-alleges and incorporates by reference paragraphs 1-49 of this Information.

53.     On or about the following dates, in the District of Massachusetts, and elsewhere, the defendant,

KEVIN RICHARDS,

knowingly and willfully made materially false, fictitious and fraudulent statements and representations in a matter within the jurisdiction of the executive branch of the Government of the United States:

| Count | Date | False Statement |
|-------|------|-----------------|
| 2 | January 4, 2021 | RICHARDS's statement on his OGE Form 450, Confidential Financial Disclosure Report, that he had held no reportable outside position in 2020. |
| 3 | February 22, 2021 | RICHARDS's email to the GSA Attorney-Advisor stating, "I did not work for them [the Duxbury Real Estate Company] last year. I did not do any outside business last year." |

All in violation of Title 18, United States Code, Section 1001(a)(2).

## FORFEITURE ALLEGATION
### (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

The United States Attorney further alleges:

1.   Upon conviction of the offense in violation of Title 18, United States Code, Section 201(c)(1)(B), set forth in Count One, the defendant,

### KEVIN RICHARDS,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

2.   If any of the property described in Paragraph 1, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

     a.   cannot be located upon the exercise of due diligence;

     b.   has been transferred or sold to, or deposited with, a third party;

     c.   has been placed beyond the jurisdiction of the Court;

     d.   has been substantially diminished in value; or

     e.   has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 1 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

13

Respectfully submitted,

RACHAEL S. ROLLINS
United States Attorney

By: _____
Dustin Chao
Christine Wichers
Assistant U.S. Attorneys

14